Jesús María Texidor Díaz et al., Petitioners, *v.* Superior Court of Puerto Rico, Guayama Part, Ángel D. Marchand Paz, Judge, Respondent; Carmen Texidor Laboy, Intervener.

No. C-65-57.      Decided June 7, 1967.

*Gabriel De La Haba* and *Carlos Martínez Texidor* for petitioners. *Elmer Toro Lucchetti, Segurola, Romero & Toledo* for intervener.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

On January 10, 1951, Carmen Texidor Laboy filed a complaint in the Guayama Part of the former District Court alleging that she was an acknowledged natural daughter of Manuel Texidor Díaz. The action was based on the alleged uninterrupted possession of the status of natural daughter, justified by acts of the presumptive father and of the persons having the right to inherit from him. After several incidents, on December 10, 1952, she filed an amended complaint wherein she substantially reproduced the allegations of the original complaint with the exception that on this occasion she alleged also that she had been acknowledged by her certificate of baptism.[1]

---

[1] How she reaches the conclusion that she was acknowledged by means of the certificate of baptism, we do not know. The certificate of baptism which appears in the record as Exhibit A, signed by Rev. Luis L. Díaz,

Against both complaints, petitioners herein filed a motion wherein, among other things, they prayed for the dismissal on the ground that the prescriptive term set forth by § 126 of the Civil Code, 31 L.P.R.A. § 505, had expired. By Order of September 13, 1957 the Superior Court, Guayama Part, declared that the action had prescribed and on the same date rendered judgment dismissing the amended complaint. Although the judgment had been rendered more than seven years previously, the copy of the notice thereof was not filed in the record until 1964.[2]

On April 20, 1965, on a motion for reconsideration timely filed by plaintiff, the respondent court proceeded to reconsider and to set aside its order and judgment of September 13, 1957, on the ground that under the ruling of *Ocasio v. Díaz*, 88 P.R.R. 658 (1963) it was bound to do so.

Defendants have appealed to this Court by way of certiorari because they believe that the trial court erred in deciding that the action has not prescribed.

As it may be seen, we do not have before us the problem, which can be called substantive, of whether or not the plain-

---

states only: "CATHOLIC CHURCH OF PATILLAS, P.R.—Nov. 4, 1949— CERTIFICATE OF BAPTISM OF CARMEN LABOY.—I certify that in the registry of baptisms No. 30 of this parish at folio 425 under number 375 there is a certificate which copied verbatim says:—'On August 8, 1924, I baptized CARMEN; who was born on September 12, 1923; natural daughter of Jacoba Laboy, born in Patillas and resident of Patillas.—Maternal grandparents: Ángel and Francisco Velázquez (*sic*).—Godparents: Enrique Colón and Felícita Laboy.—signed: Filiberto Pardo.—signed: Luis L. Díaz. —parish priest.' "

[2] As a result of the commencement of a new suit between the same parties in the Superior Court, San Juan Part, in which the defense of res judicata was set up, it was discovered that in the record of the instant case there was no copy of the notice of judgment of 1957. The defendants alleged that it had been filed properly but that it had been lost. On August 24, 1964 the trial court denied a "Motion on Substitution of Lost Document," deciding that the notice allegedly lost had never been filed. In said ruling it ordered that a new notice be prepared, copy thereof be served upon the parties, and the original be filed in the record. Finally on December 7, 1964, the original and a copy of the new notice were filed in the record.

tiff is the daughter of Manuel Texidor Díaz. We do not have to decide either whether the latter, or in default thereof, the persons having the right to inherit from him, acknowledged Carmen. The problem raised by this appeal is one previous to the two aforementioned, for it is a question of whether or not the judicial action brought by plaintiff has prescribed.

■ The events determining the rights to which plaintiff may or may not be entitled occurred long before the Constitution of the Commonwealth became effective in 1952. She was born on September 19, 1923. Manuel Texidor Díaz died on November 17, 1930. Plaintiff attained full age on September 19, 1944. Because her presumptive father died during plaintiff's minority, she was able to bring her action during the first four years after having attained majority, that is until she was 25 years old, pursuant to § 126 of the Civil Code, 31 L.P.R.A. § 505.[3] That term expired on September 19, 1948. It was not until January 10, 1951 that plaintiff filed her complaint. The conclusion that when she attempted to file the action the latter had already become extinguished is inescapable.[4]

Then, the judgment of the Superior Court rendered on September 13, 1957 is correct and the one rendered on reconsideration on April 20, 1965 is erroneous.

■ The trial court, in its judgment of 1965, and plaintiff in her memorandum before us, commit some common errors. They believe that the term of extinguishment of § 126

---

[3] In its part pertinent herein said § 126 provides: "The action for the recognition of natural children, can only be established during the life of the presumptive parents, and a year beyond their death except in the following instances: (1) If the father or the mother shall have died during the minority of the child, in which case, the child may bring his action before the first four years of his having attained his majority, shall have elapsed."

[4] Said term is one of extinguishment, *Ortiz Rivera* v. *Heirs of González Martínez*, 93 P.R.R. 549 (1966); Velázquez, Guaroa, *La Extinción de la Acción de Filiación en el Derecho Puertorriqueño*, 17 *Rev. C. Abo. de P.R.* 237 (1957).

of the Civil Code is incompatible with Act No. 229 of March 12, 1942.[5] There is no such thing. On the contrary, it appears clearly, as we shall see, that when the lawmaker drafted Act No. 229 he was aware of the provisions of the Civil Code on the acknowledgment of natural children. In Act No. 229 itself, as amended, he refers to said provisions of the Civil Code. Let us see.

In its two pertinent sections Act No. 229 reads as follows:

"Section 1.—All children born out of wedlock subsequent to the date this Act takes effect, shall be natural children, whether or not the parents could have married at the moment when such children were conceived. These children will be legitimized by the subsequent marriage of the parents, to each other." Sess. Laws 1942, p. 1296.

"Section 2.—Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, may be recognized for all legal purposes by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom. These children will be legitimized by the subsequent marriage of the parents, to each other.

"In case the children referred to in this section are not recognized by the voluntary action of their parents, and in default of the latter, by that of the persons having the right to inherit therefrom, said children shall be considered as natural children for the sole purpose of bearing the surname of their parents. *The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children;* It being understood, however, That such a recognition shall only have the scope herein expressed." (Italics ours.) Sess. Laws 1945, p. 814; 31 L.P.R.A. §§ 501–503.

In the first place, what Act No. 229 pursues, with a praiseworthy, humanitarian and just spirit, is to establish that all children born out of wedlock (subsequent to the

---

[5] Its § 2 amended by Act No. 243 of May 12, 1945. 31 L.P.R.A. §§ 501–503.

date said act takes effect) shall be natural children irrespective of whether or not their parents could have married at the moment they were conceived. In other words, Act No. 229 permits what was not permitted before. This is, that adulterine and incestuous children who could not be considered before for legal purposes as natural children, § 125 of the Civil Code, 31 L.P.R.A. § 504, by virtue of said Act No. 229 are declared natural children, with all the rights implied thereby under that legislation prior to the Constitution and to Act No. 17 of August 20, 1952, 31 L.P.R.A. § 441.

Act No. 229 provides also that said children will be legitimized by the subsequent marriage of the parents, to each other. In addition, said Act permits that those children who lacked the qualifications of natural children according to previous legislation, this is, adulterine and incestuous children, may be recognized by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit from them. Therefore what could not be done before, that is, acknowledge adulterine or incestuous children, may be done now, since the year 1942, by virtue of said Act No. 229.

For such cases where the children mentioned in Act No. 229 were not acknowledged *by the voluntary action* of their parents, and in their default, by that of the persons having the right to inherit from them, § 2 of the Act, as amended in 1945, provided that said children (those not voluntarily acknowledged) would be entitled to bring an action for bearing their father's surname.

As may be seen, Act No. 229 contemplates two different situations: One, when the parents, or in their default, the persons having the right to inherit, recognize by their voluntary action those children born out of wedlock. The other situation is when said persons do not acknowledge them and

it is for this second alternative that said act provides them the right to bring an action to obtain their father's surname. We indicated before that upon drafting this Act No. 229 the lawmaker was aware of the procedure contained in the Civil Code for this matter and this is shown in the second paragraph of § 2 of Act No. 229, as amended, which is the one which refers to the situation when the children referred to in that Act are not recognized by the voluntary action of their parents or by that of the persons having the right to inherit, and the one which provides the action for the purpose of bearing the surname. The lawmaker provided therein that "The action for this recognition shall be prosecuted in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children."

■ Therefore, the right which Act No. 229 grants to the parents and other persons to recognize by their voluntary action the illegitimate children who lacked the qualifications of natural children under the previous legislation need not be mistaken with the judicial action of filiation which said children may bring. The parents, or in their default, the persons having the right to inherit from them, may recognize by their voluntary action at any time. But in order that the children may obtain compulsory acknowledgment through the courts, they must conform to the procedures and pre-scriptive terms contained in our positive legislation and in this case in particular, § 126 of the Civil Code. There is, then, no incompatibility whatsoever between Act No. 229 and § 126 of the Civil Code.

■ It is clear that what we are considering is not an act of voluntary acknowledgment but a litigation, that is, a judicial action, brought by the plaintiff to obtain a com-pulsory acknowledgment by a judicial judgment. It was for acknowledgments by judicial action that § 126 of the Civil Code established the term of extinguishment we are examin-ing herein.

■ In the second place, plaintiff's right does not arise from Act No. 229 of 1942. As we have indicated, this act was passed to benefit the illegitimate children who lacked the qualifications of natural children according to previous legislation. That is not the case of plaintiff, for if we assume that plaintiff is the daughter of Manuel Texidor Díaz, plaintiff would have had the qualifications of natural child according to previous legislation for at the time of conception her parents were single and could have intermarried. Act No. 229 did not improve nor impair plaintiff's condition. Even in the absence of Act No. 229 her alleged father could have acknowledged her at any time and ever since she was born in the year 1923 (first through a legal representative and afterwards personally) and until she attained the age of 25 years she could have exercised her right to claim judicially her acknowledgment in accordance with the provisions of § 126 of the Civil Code.

It is very significant, and it may be said that here lies the error committed by the trial judge in his judgment of 1965, that upon citing the first paragraph of § 2 of Act No. 229 in said judgment, he omitted the following words: "prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation." Those clauses are critical for the solution of this case (and for the correct application of that act) since they clearly exclude plaintiff from the scope of Act No. 229 because, as we have previously stated, under the previous legislation plaintiff (if the biological relationship is true) was neither an adulterine nor an incestuous daughter but she would have been a natural daughter.

■ Another error of weight committed by the trial judge is that he states that the term of prescription to exercise the action "would appear" to be of 15 years and relies on *Torres v. Heirs of Cautiño*, 70 P.R.R. 614 (1949), where it was said

that when a period of prescription is not provided by law for actions of filiation, the term of 15 years contained in § 1864 of the Civil Code, 31 L.P.R.A. § 5294, shall be applied. Said section provides that "A mortgage action prescribes after twenty years, and those which are personal and for which no special term of prescription is fixed, after fifteen years." When the trial judge cited that case the same had been expressly overruled for 13 years on that particular in *Fuentes* v. *District Court,* 73 P.R.R. 893, 905–906 (1952). It had to be so, for as admitted in *Fuentes* v. *District Court, supra,* there is a term expressly established for the actions for acknowledgment of natural children in § 126 of the Civil Code, which in its pertinent part we have copied above in footnote No. 3 of this opinion.

■ Finally, the trial judge committed error in his judgment of 1965 in believing that the case of *Ocasio* v. *Díaz, supra,* was applicable because we said therein that its judgment is applicable to all cases *pending* in 1952. This is correct, but when we said "pending" naturally we meant live and pending cases; we did not intend to include the actions which had prescribed or which were extinguished as that of the case at bar. Much confusion would be created and the suits would be multiplied, if it were otherwise. We could hardly revive, in good law through the judgment in *Ocasio,* actions which had prescribed. Said judgment is applicable to live actions and actions in prosecution but in no way to actions already dead by way of prescription or extinguishment.[6]

---

[6] Some of the authors who have recently dealt in Puerto Rico with this theme of filiation and extramarital children, and their works, are: Calderón, Álvaro R., Jr., *La Filiación en Puerto Rico* (1963); Mascareñas, C. E., *Algunas Consideraciones Sobre la Filiación de los Hijos Extramatrimoniales y los Derechos de los Mismos,* 10 *Revista de Derecho Puertorriqueño* 173 (1963); same author, *La Filiación en el Derecho Puertorriqueño,* 4 *Revista de Derecho Puertorriqueño* 7 (1962); Velázquez, Guaroa, *La Extinción de la Acción de Filiación en el Derecho Puerto-*

The order of the Superior Court, Guayama Part, entered in this case on April 20, 1965, will be set aside.

---

*rriqueño,* 17 *Rev. C. Abo. de P.R.* 237 (1957); González Blanes, Héctor, *Paternidad* v. *Filiación,* 17 *Rev. C. Abo. de P.R.* 151 (1957); Calderón, Álvaro R., Jr., *La Igualdad Jurídico Filial en Puerto Rico,* 16 *Rev. C. Abo. de P.R.* 37 (1956); Belén Trujillo, Edwin W., *De la Paternidad y la Filiación Conforme al Derecho Puertorriqueño,* revised ed. *Colegio de Derecho U.P.R.* (1955); Muñoz Morales, Luis, *De los Hijos Legítimos, Ilegítimos y Legitimados,* 10 *Rev. Jur. U.P.R.* 229 (1941); Muñoz Morales, Luis, *Derecho de los Hijos Ilegítimos en Puerto Rico,* 6 *Rev. Jur. U.P.R.* 324 (1936–37).